Irwin D. Davidson, J.
Motions Numbered 79-87 and 101-103 of August 3,1965 are consolidated.
Petitioners herein in six separate proceedings move to compel delivery to the Sheriff of 20 drafts in the possession of respond *540 ent First Chicago International Banking Corporation. By separate motions First Chicago has moved to dismiss the petitions and for other relief. In addition, it seeks leave to commence an interpleader action as stakeholder and to stay these proceedings pending determination of that action. Consolidation of all present proceedings is also sought by some of the movants.
Involved herein are 20 drafts in the face value of $100,000 each, drawn on a Uruguayan bank, the Banco Transatlántico del Uruguay (referred to in all the papers as BTU), bearing the guarantee of the Banco de la República Oriental del Uruguay, which appears to have official governmental status as the central bank of Uruguay.
Petitioners are claimants on other notes as to which BTU defaulted in paying. Orders of attachment were obtained in each of their respective actions and served on respondent First Chicago, who refused to deliver the drafts here in question to the Sheriff asserting that the drafts are not attachable property.
The facts as can be gleaned from the papers appear to be as follows:
Sometime in early part of this year, BTU, finding itself in dire financial condition, sought assistance from the central government bank. Apparently, it was arranged that BTU would issue commercial paper to be sold in the New York market, and that the government bank would guarantee payments on such paper. The drafts dated April 1, 1965 were made payable to First Chicago’s order and were delivered to First Chicago in New York. Presumably, First Chicago was charged by BTU with the placement of the drafts to dealers. It is contended by respondent that naming it as payee on the note was contrary to its understanding with BTU that the name of the payee was to be left blank since First Chicago did not intend to discount the drafts. The notes were delivered on April 1, 1965. The first attachment order was obtained April 2, 1965. The drafts in question were never sold on the New York market. In addition to petitioners’ claims on the notes, First Chicago claims a setoff right pursuant to section 151 of the Debtor and Creditor Law, and by separate action the central bank sued First Chicago claiming that it was entitled to the drafts. BTU is now apparently insolvent.
Attachment is available under current practice against “ Any debt or property against which a money judgment may be enforced as provided in section 5201 ” (CPLR 6202). By reference this includes any debt which is past due or which is yet to become due, certainly or upon demand of the judgment *541 debtor or any property which could be assigned or transferred. Thus levy can be made on debts represented by negotiable instruments by levying on the holder of the instrument or seizing the instrument itself.
In the instant case, BTU is the alleged debtor of the petitioners, and generally its property within this jurisdiction is the subject of attachment. However, taking the instruments on their face, it appears that if anything they represent money owed by and not to BTU, and going deeper into the surrounding circumstances herein, these drafts appear to have been made in contemplation of an issuance of secured paper which issuance never took place. In this regard, the court agrees with respondent, First Chicago, that the vintage ease of Coddington v. Gilbert (17 N. Y. 489) is analogous. There, bonds were deposited to be delivered to such persons as should be willing to lend the company therein involved money. They were readied by the company for the purpose of sale on the market. It was held by the court that in such circumstance they were not property and, therefore, unattachable.
Had it been established herein that First Chicago had obligated itself to buy some or all of this paper, an attachable indebtedness of First Chicago to BTU might have been created (see McNelus v. Stillman, 172 App. Div. 307). This is not the case, however.
It is also urged by petitioners herein that apart from the alleged debt itself, the written instruments are attachable as property. They rely on section 39 of the General Construction Law which includes in the term personal property “ all written instruments themselves, as distinguished from the rights or interests to which they relate ’ ’ as support for this contention. While it might be true that ownership of the pieces of paper might still rest in BTU, they appear to have no intrinsic value. Were they to be a holograph, or contain an autograph of a famous personality, petitioners’ point might be well taken. Petitioners have made it abundantly clear that it is the ‘1 aval ’ ’ or guarantee of the central bank that they are after. It appears undisputed, however, that this guarantee was given to facilitate the sale of the drafts upon issuance. Since no issuance was made the conditions for the guarantee have not been met. Without this, the papers themselves are trifles as with which the law should not concern itself.
In view of the foregoing, the motions to dismiss the petitions are granted. The remaining motions are denied as academic.